UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION



NOV 7 2025 PM 3:53
FILED - USDC - NDTX - LU

KEVIN N. BASS,
Plaintiff,

5-25CV-244-H

v.                              Civil Action No. _____

TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER;
AMANDA McSWEEN, in her individual and official capacities as University Registrar;
LAUREN COBBS, M.D., M.Ed., FACP, *in her individual and official capacities as Senior Associate Dean for Student Affairs (SOM)*;
SIMON WILLIAMS, Ph.D., in his individual and official capacities as Senior Associate Dean for Academic Affairs (SOM);
TAMARA MANCINI, M.Ed., in her official capacity as Director of Student Disability Services;
MIA MYERS, in her official capacity as Associate Managing Director, Student Financial Aid;
JOHN/JANE DOE, in his/her official capacity as TTUHSC ADA Title II Coordinator;
DOE HEARING OFFICER 1, in his/her individual capacity; and
DOES 2–10, in their individual capacities,

Defendants.

VERIFIED COMPLAINT FOR DAMAGES, DECLARATORY (28 U.S.C. §§ 2201–02), AND INJUNCTIVE RELIEF

INTRODUCTION

1. This civil action challenges Defendants' disability-based denial of meaningful access to a high-stakes student disciplinary hearing; selective departures from written procedures; publication of stigmatizing accusations tied to a status-changing transcript notation; and retaliation for protected speech and disability-rights activity.

2. Plaintiff seeks: (a) damages and declaratory relief under § 504 of the Rehabilitation Act against TTUHSC as a federal-funds recipient; (b) prospective relief under Title II of the ADA against appropriate officials pursuant to Ex parte Young, 209 U.S. 123 (1908); and (c) damages and declaratory relief under 42 U.S.C. § 1983 against individual-capacity officials for violations of the First and Fourteenth Amendments.

JURISDICTION, VENUE, AND AUTHORITY FOR RELIEF

3. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(1)–(2) because a substantial part of the events or omissions giving rise to the claims occurred here and at least one defendant resides or is found here.

5. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–02 and Fed. R. Civ. P. 57 and 65. Costs are authorized by 28 U.S.C. § 1920; and, if counsel appears, reasonable attorney's fees from counsel's appearance forward are authorized by 42 U.S.C. §§ 1988 and 12205 and 29 U.S.C. § 794a(b). Post-judgment interest is authorized by 28 U.S.C. § 1961.

SOVEREIGN IMMUNITY, REMEDIAL FRAMEWORK, AND EXHAUSTION

6. Plaintiff does not seek § 1983 money damages against TTUHSC or against officials in their official capacities. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

7. TTUHSC's receipt of federal funds waives Eleventh Amendment immunity for § 504 claims. 42 U.S.C. § 2000d-7; Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 280–89 (5th Cir. 2005) (en banc). TTUHSC is an arm of the State of Texas and therefore a Title II "public entity," 42 U.S.C. § 12131(1)(B), and a § 504 "program or activity," 29 U.S.C. § 794(b)(2)(A).

8. Plaintiff seeks prospective, non-monetary relief under Title II against appropriate officials with a sufficient enforcement connection under Ex parte Young. See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645–46 (2002).

9. Consistent with Cummings v. Premier Rehab Keller, P.L.L.C., 142 S. Ct. 1562 (2022), and Barnes v. Gorman, 536 U.S. 181 (2002), Plaintiff does not seek punitive or emotional-distress damages under ADA/§ 504. He seeks economic losses and, where permitted, nominal damages. Punitive damages are sought, if at all, only on § 1983 claims against individual-capacity defendants where allowed by law.

10. No administrative exhaustion is required for the Title II or § 504 claims pleaded here.

STATUTE OF LIMITATIONS AND TIMELINESS

11. The events at issue occurred primarily between December 2023 and January 2024, with continuing effects thereafter.

12. Texas's two-year personal-injury limitations period applies to § 1983, Title II, and § 504 claims. See Frame v. City of Arlington, 657 F.3d 215, 237–38 (5th Cir. 2011) (en banc); Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001). This action is timely.

PARTIES

13. Plaintiff Kevin N. Bass is a qualified individual with disabilities within the meaning of § 504 and Title II.

14. Defendant Texas Tech University Health Sciences Center ("TTUHSC") is a public entity that receives federal financial assistance and is an arm of the State of Texas. It is therefore a Title II "public entity," 42 U.S.C. § 12131(1)(B), and a § 504 "program or activity," 29 U.S.C. § 794(b)(2)(A). Federal-funds proof includes TTUHSC's Title IV participation (Federal School Code 016024), annual Single Audit reporting, and Texas Comptroller records showing federal expenditures for agency 739.

15. Defendant Amanda McSween is TTUHSC's University Registrar. She is sued in her individual capacity (damages under § 1983) and in her official capacity (prospective Title II relief).

16. Defendant Lauren Cobbs, M.D., M.Ed., FACP, is Senior Associate Dean for Student Affairs (School of Medicine). She is sued in her individual capacity (damages under § 1983) and in her official capacity (prospective Title II relief).

17. Defendant Simon Williams, Ph.D., is Senior Associate Dean for Academic Affairs (School of Medicine). He is sued in his individual capacity (damages under § 1983) and in his official capacity (prospective Title II relief).

18. Defendant Tamara Mancini, M.Ed., is Director of Student Disability Services. She is sued in her official capacity (prospective Title II relief).

19. Defendant Mia Myers is Associate Managing Director, Student Financial Aid. She is sued in her official capacity (prospective Title II relief related to status reporting/holds interfaces).

20. Defendant John/Jane Doe is TTUHSC's ADA Title II Coordinator (identity presently unknown). He/she is sued in official capacity to implement injunctive relief.

21. Defendant DOE Hearing Officer 1 presided over Plaintiff's hearing and is sued in his/her individual capacity.

21A. The Hearing Officer who presided over Plaintiff's December 11, 2023 hearing was Darren G. Gibson, an outside attorney to whom the Student Conduct Board Chair delegated procedural authority; Mr. Gibson acted under color of state law in performing a delegated public function. Plaintiff will amend to substitute service information when confirmed.

22. Defendants DOES 2–10 are presently unidentified TTUHSC officials who participated in the events alleged below. They are sued in their individual capacities.

DEFENDANTS (IDENTIFICATION & ROLES FOR RELIEF)

23. For clarity regarding implementation of prospective relief, the institutional roles implicated include:

- TTUHSC — entity defendant for § 504 (federal-funds recipient).
- AMANDA McSWEEN — University Registrar: transcript issuance/notations/holds.
- LAUREN COBBS, M.D., M.Ed., FACP — Senior Associate Dean for Student Affairs (SOM): student-discipline logistics, hearing administration.
- SIMON WILLIAMS, Ph.D. — Senior Associate Dean for Academic Affairs (SOM): emergency removal/academic-affairs process triggers.
- TAMARA MANCINI, M.Ed. — Director, Student Disability Services: ADA effective-communication/modifications execution.
- MIA MYERS — Associate Managing Director, Student Financial Aid: Title IV (R2T4)/enrollment-status reporting and holds workflows.
- ADA TITLE II COORDINATOR — 28 C.F.R. § 35.107 coordination of Title II compliance and central implementation of injunctive relief.

FEDERAL–STATE COORDINATION / NON-INTERFERENCE

24. Plaintiff maintains a separate, exhibit-free state action seeking only a prompt, public name-clearing/FERPA-amendment hearing and neutral annotation; no damages are sought there. The federal claims here (§ 504/Title II/§ 1983) seek distinct remedies and do not require this Court to enjoin or review any state-court order. No relief requested here would interfere with any state proceeding or order, and abstention is unwarranted.

FACTUAL ALLEGATIONS

A. Disability notice and requested accommodations

25. Before a December 11, 2023 disciplinary hearing, Plaintiff provided written notice of ASD/ADHD/GAD diagnoses, lodged accommodation requests through Student Disability Services ("SDS"), and supplied a neuropsychological evaluation recommending communication supports, including limited attorney-assisted questioning to cue/clarify. On December 8, 2023, Plaintiff and counsel called SDS *to initiate accommodations under TTUHSC HSC OP 77.14, which recognizes a Letter of Accommodation (LOA) as the university-approved mechanism and provides that, once an LOA is issued, no further proof should be required and classroom accommodations should be implemented within one week (five business days).

26. Officials acknowledged the SDS process on the record. The Hearing Officer admitted only a redacted evaluation—excluding the accommodations section as "outside the Board's scope"—and categorically barred counsel from questioning witnesses directly even as a communication aid. This contravened OP 77.14's effective-communication framework and Plaintiff's documented functional limitations (processing speed/executive function under sustained adversarial sessions; need for orderly turn-taking; benefit from written copies; predictable breaks).

B. Hearing structure and departures from written rules

27. The hearing lasted roughly fourteen hours and involved ten witnesses plus Plaintiff. Published hearing materials set 10-minute openings, 30 minutes per witness per side, and confirmed recording protocols; yet the presider barred contemporaneous objections; required party questions to be submitted in writing; asserted unilateral authority to limit Plaintiff's questioning for "relevance"; and applied time limits and sequencing asymmetrically against Plaintiff, contrary to the published rules promising equal time limits, Board questions first, and no objections.

28. On information and belief, TTUHSC retained an outside Hearing Officer for Plaintiff's proceeding who lacked neutrality and operated under constraints that materially favored the administration, including restricting Plaintiff's questioning and applying time limits asymmetrically, contrary to published procedures.

C. Evidence gating and record access

29. Defendants consolidated matters without consent; denied requested separate hearings; restricted defense witnesses; accepted late/redacted evidence favorable to the administration while excluding comparable defense evidence.

30. TTUHSC controlled the recording, which contained apparent discontinuities. Access to the "official" record was delayed and limited to in-person audio review. Plaintiff seeks native audio/video files with hashes, access logs, and chain-of-custody.

D. "Direct threat" framing without individualized assessment

31. The Hearing Officer invoked ADA "direct threat" concepts but did not conduct an individualized assessment grounded in current medical knowledge or best available objective evidence, nor did he/she consider whether reasonable modifications could mitigate any risk. See 28 C.F.R. § 35.139(b); Bragdon v. Abbott, 524 U.S. 624, 649–50 (1998); EEOC v. Exxon Corp., 203 F.3d 871, 873–74 (5th Cir. 2000).

E. Protected speech and retaliation context

32. Plaintiff publicly criticized COVID-19 policies and filed grievances—speech and petitioning on matters of public concern.

33. Within days of administrators urging him to stop posting online, professionalism charges issued; an interim removal/trespass notice referenced his speech "context"; and witnesses reported being coached to "document the most damaging" version. Class-wide messaging on January 7, 2024 explicitly told recipients to "check his Twitter," underscoring retaliatory animus and selective enforcement.

F. Publication and ongoing harm

34. Before the hearing, administrators issued a campus-wide "BOLO" message. After the hearing, administrators circulated a class-wide message—"we are one student lighter … check his Twitter"—and

TTUHSC placed an "Administrative Dismissal Effective 01-11-2024" notation on Plaintiff's transcript, which third-party recipients reported caused application denials. Plaintiff suffered significant educational, economic, and reputational harm. Evidence includes (i) a January 1, 2024 public post stating "we did it, Kevin Bass' medical committee voted to expel him," (ii) the January 7, 2024 class-wide broadcast (7:46 a.m.) with a later recall request, and (iii) BOLO/ban echoes such as "not letting this student onto campus," attributable to or echoing agency communications.

34A. On October 16, 2025, TTUHSC issued an official transcript bearing the notation "Administrative Dismissal Effective 01-11-2024." Third-party recipients reported adverse decisions after receiving transcripts with that notation. Ongoing transcript issuance constitutes continued publication by the agency.

G. Exclusion and campus-access restrictions (status change)

35. TTUHSC issued an Emergency Removal and campus ban—stating Plaintiff was not allowed on HSC property during the investigation—and a Criminal Trespass Warning that required police coordination even to access his child's school on TTU property. These restrictions coincided with the stigmatizing publications described above.

35A. On November 4, 2023, the Assistant Vice Dean for Student Affairs emailed more than thirty recipients—including Covenant Branch campus and affiliate-hospital gatekeepers—stating: "do not allow Kevin Bass into the Covenant Branch office nor badge him in at any of the hospitals," pending "further notice." On information and belief, several recipients were non-TTUHSC clinical-affiliate personnel, reflecting an agency directive that barred access before any adjudication and circulated beyond the University.

H. Individual defendants' personal participation (non-exhaustive)

36. Lauren Cobbs: Oversaw the student-discipline process and the selection/instructions of the Hearing Officer; denied or ratified denials of separate hearings and evaluator testimony; enforced or ratified asymmetric time limits and question-filtering; urged Plaintiff to curtail protected online speech; and participated in class-wide communications about Plaintiff.

37. Simon Williams: Initiated or ratified interim removal measures; invoked "direct threat" framing without individualized assessment; approved consolidation; and enforced or ratified procedures that limited Plaintiff's ability to be heard.

38. Amanda McSween: Published and/or caused to be published the transcript notation "Administrative Dismissal Effective 01-11-2024"; communicated or caused the communication of the status to third parties; and maintained transcript holds/notations despite Plaintiff's objections and pending review. Evidence of third-party reliance includes denials of opportunities upon receipt of transcripts bearing the notation.

39. DOE Hearing Officer 1: Presided over the hearing; barred real-time objections; filtered or refused Plaintiff's submitted questions; cut Plaintiff's questioning short; and admitted administrative evidence while excluding comparable defense evidence.

40. Tamara Mancini (official capacity): Received Plaintiff's SDS notice and requests; failed to give primary consideration to Plaintiff's requested auxiliary aids; and did not implement reasonable modifications to ensure effective communication at the hearing under OP 77.14's LOA and implementation benchmarks.

41. Mia Myers (official capacity): Maintains Title IV/enrollment-status reporting and related holds; has operational control over processes implicated by transcript notations and status communications and is a necessary official-capacity implementer of prospective relief. Following status change, TTUHSC cancelled $3,524.00 in aid, revoked $20,118.11 in scholarship, and posted a $24,316.56 balance—all flowing from the stigmatizing dismissal status and notation.

I. Dismissal determination and scope

42. TTUHSC's Board letter states the hearing lasted approximately 14 hours and that the Board "reviewed … additional documentation … including a medical assessment," yet the accommodations content was excluded as "outside the Board's scope," denying a meaningful chance for disability-appropriate presentation.

J. Publication logs, recipients, and continuing effects

43. Plaintiff has compiled publication logs and will seek metadata/listserv expansion logs and meeting artifacts (calendars, Zoom/Teams recordings) to identify recipients and authenticate channels (email, LMS/Canvas, Teams/Slack, GroupMe/WhatsApp, and other student-facing platforms). These materials support both the publication element of "stigma-plus" and the need for targeted, publication-only expedited discovery.

K. Ongoing violations; basis for prospective relief and expedited preservation

44. Plaintiff faces ongoing harm from current policies and practices governing transcript notations and status communications, access to and preservation of hearing records, and rules that will govern any renewed adjudication or credentialing communications. Targeted preservation and Rule 26(d) expedited discovery (publication-only) are warranted to capture message headers, listserv logs, audit trails, and collaboration-platform exports and to enable corrective notices after judgment.

CLAIMS FOR RELIEF
(Each Count incorporates ¶¶ 1–44 by reference.)

COUNT 1 — Rehabilitation Act § 504 (Damages & Declaratory Relief) — Against TTUHSC

45. Section 504 prohibits disability discrimination in any "program or activity" receiving federal financial assistance. 29 U.S.C. § 794(a), (b)(2)(A). Elements: (1) disability; (2) otherwise qualified; (3) exclusion from participation in, denial of benefits of, or discrimination under a federally funded program; and (4) exclusion by reason of disability (and, to the extent § 504 is construed to require it, solely by reason of disability, as construed in the Fifth Circuit). See Delano-Pyle v. Victoria Cnty., 302 F.3d 567, 574 (5th Cir. 2002).

46. Monetary relief requires intentional discrimination, satisfied at least by deliberate indifference to known, necessary accommodations. See Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 454–55 (5th Cir. 2005); Cadena v. El Paso Cnty., 946 F.3d 717, 724–27 (5th Cir. 2020); Windham v. Harris Cnty., 875 F.3d 229, 235–37 (5th Cir. 2017).

47. TTUHSC—through officials with authority to provide accommodations and to rectify denials, including SDS Director Mancini and Senior Associate Deans Cobbs and Williams, and through the Hearing Officer—had actual knowledge of Plaintiff's ASD/ADHD-related communication needs yet (a) excluded the accommodations section of his evaluation; (b) barred attorney-assisted questioning as a communication aid; (c) applied time limits and filters asymmetrically; and (d) refused modest schedule/format modifications—denying meaningful access to the adjudication. See 28 C.F.R. § 35.160(a)(2) (effective communication); § 35.139 (direct threat). This deliberate indifference proximately caused economic losses including Title IV balance due, lost scholarship funds, lost stipends, exam and application fees, and delays in credentialing.

48. Plaintiff seeks economic damages proximately caused by the violations and, where permitted, nominal damages. No punitive or emotional-distress damages are sought under § 504.

COUNT 2 — ADA Title II (Prospective Relief) — Against Official-Capacity Defendants (ADA Coordinator; Registrar; Senior Associate Deans Cobbs and Williams; SDS Director Mancini; Financial-Aid Official Myers)

49. This claim arises under 42 U.S.C. § 12132 and is enforceable through 42 U.S.C. § 12133. Title II obligates public entities to make reasonable modifications in policies, practices, or procedures when necessary to avoid discrimination, unless doing so would fundamentally alter the service. 28 C.F.R. § 35.130(b)(7)(i).

50. Title II also requires effective communication and obligates the entity to give primary consideration to the individual's requested auxiliary aids. 28 C.F.R. § 35.160(a)(2). Primary consideration means honoring the individual's chosen auxiliary aid unless an equally effective alternative is available or provision would cause a fundamental alteration or undue financial/administrative burden. Where "direct threat" is asserted, the entity must conduct an individualized assessment based on current medical knowledge or best available objective evidence and consider whether reasonable modifications can mitigate risk. 28 C.F.R. § 35.139(b); Bragdon v. Abbott, 524 U.S. 624, 649–50 (1998); EEOC v. Exxon Corp., 203 F.3d 871, 873–74 (5th Cir. 2000).

51. Defendants failed to provide reasonable modifications and effective-communication measures necessary for Plaintiff's participation (e.g., limited attorney-assisted questioning as a communication aid; equitable time allocations keyed to documented limitations; admission of evaluator testimony; timely disclosure; and record-access protocols). Each named official has a sufficient enforcement connection for Ex parte Young relief: the Registrar controls transcript notations and issuance/holds; the Senior Associate Deans oversee hearing administration and emergency-removal processes; the SDS Director implements ADA accommodations across proceedings; the Financial-Aid official controls status reporting and holds interfacing with Title IV systems; and the ADA Coordinator orchestrates Title II compliance (28 C.F.R. § 35.107). For complete prospective relief, the President (appointment of a hearing official/committee) and Provost/EVPAA (hearing scheduling and FERPA-amendment processing) possess direct enforcement connections under TTUHSC student-records policy and may be added if necessary.

52. Plaintiff seeks a narrowly tailored injunction requiring compliance with §§ 35.130(b)(7)(i), 35.160, and 35.139(b) in any ongoing or future proceedings, including: (a) designation of the ADA Coordinator as a centralized point-of-contact to implement accommodations across Student Affairs/Registrar/Academic Affairs; (b) preservation and access to native audio/video files and associated hashes, access logs, and chain-of-custody records; (c) FERPA-aligned protections; (d) procedures ensuring that transcript notations and status communications are generated, maintained, and communicated in a manner consistent with Title II going forward; and (e) if TTUHSC conducts any renewed adjudication concerning the events alleged herein, it must do so under an ADA-compliant framework that includes *equal time allocation, reasonable auxiliary aids, disclosure timelines, and access to a complete, continuous record.* See Tennessee v. Lane, 541 U.S. 509, 531–34 (2004); United States v. Georgia, 546 U.S. 151, 159 (2006).

52A. The injunction should also require primary consideration for Plaintiff's requested auxiliary aids—including limited attorney-assisted questioning as a communication aid, predictable breaks, CART/closed captioning, and written copies of verbal information—consistent with OP 77.14 and 28 C.F.R. § 35.160.

COUNT 3 — Procedural Due Process (Fourteenth Amendment) via 42 U.S.C. § 1983 (Damages & Declaratory Relief) — Against Cobbs, Williams, DOE Hearing Officer 1, and DOES 2–10 (individual capacities)

53. At all relevant times, Defendants Cobbs, Williams, DOE Hearing Officer 1, and DOES 2–10 acted under color of state law as officials of a public university. Students facing serious disciplinary sanctions are entitled to notice and a meaningful opportunity to be heard, evaluated under Mathews v. Eldridge's balancing. See Dixon v. Alabama State Bd. of Educ., 294 F.2d 150, 157–59 (5th Cir. 1961); Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976); Goss v. Lopez, 419 U.S. 565 (1975). This case concerns disciplinary, not academic, sanctions. Cf. Bd. of Curators v. Horowitz, 435 U.S. 78 (1978).

54. Plaintiff alleges both (i) a liberty interest in his good name, reputation, and honor, the deprivation of which was accompanied by a change of legal status (loss of student status and a transcript notation), and (ii) to the extent recognized under Texas law and TTUHSC policies, a state-created property interest in

continued enrollment. See Hughes v. City of Garland, 204 F.3d 223, 226–28 (5th Cir. 2000); Bledsoe v. City of Horn Lake, 449 F.3d 650, 653–55 (5th Cir. 2006). The liberty-interest and Mathews risk-of-error theories are primary.

55. Plaintiff does not claim a categorical right to attorney-led cross-examination. See Plummer v. Univ. of Houston, 860 F.3d 767 (5th Cir. 2017); Van Overdam v. Texas A&M Univ., 43 F.4th 522 (5th Cir. 2022). Rather, Plaintiff challenges selective departures from written rules and communication-related restrictions that, given his disabilities, denied a meaningful opportunity to be heard and materially increased the risk of erroneous deprivation at minimal administrative cost. Cf. Walsh v. Hodge, 975 F.3d 475, 484–85 (5th Cir. 2020).

56. Defendants amplified the risk of error by (i) prohibiting contemporaneous objections; (ii) categorically barring counsel's limited questioning as an auxiliary communication aid; (iii) imposing asymmetric time limits and surprise witnesses; (iv) favoring administrative evidence while gating defense evidence; and (v) restricting and delaying access to a complete, continuous record.

57. Clearly Established Law / Qualified Immunity. At the time, it was clearly established that public universities imposing serious disciplinary sanctions must provide notice and a meaningful opportunity to be heard under Dixon and Mathews, and officials may not employ arbitrary hearing restrictions that materially increase the risk of erroneous deprivation at minimal administrative cost. On the facts alleged, Defendants are not entitled to qualified immunity at the pleading stage.

COUNT 4 — "Stigma-Plus" (Fourteenth Amendment Liberty Interest) via 42 U.S.C. § 1983 (Damages & Declaratory Relief) — Against McSween and DOES who published stigmatizing statements (individual capacities)

58. At all relevant times, Defendants McSween and DOES 2–10 who published or caused publication of the statements at issue acted under color of state law as officials of a public university. Reputation alone is not a protected interest, but a claim lies where the government publishes materially false, stigmatizing facts in connection with an alteration of legal status. Paul v. Davis, 424 U.S. 693 (1976); Codd v. Velger, 429 U.S. 624 (1977); Hughes, 204 F.3d at 226–28; Bledsoe, 449 F.3d at 653–55.

59. On January 7, 2024 at approximately 7:46 a.m., the School of Medicine's Office of Student Affairs, acting under the direction of Senior Associate Dean Cobbs, sent a class-wide broadcast stating: "we are one student lighter than last week … if anyone has any further questions, just check his Twitter; I am sure he will update everyone." A recall attempt followed, as reflected in message headers. Defendants also published an official transcript notation, "Administrative Dismissal Effective 01-11-2024," which third parties used to deny opportunities. Together with campus-wide BOLO/ban echoes, these publications conveyed dangerousness and coincided with the loss of student status. The statements and insinuations were materially false and stigmatizing, and Plaintiff alleges falsity and causation, satisfying stigma-plus elements. Evidence includes publication logs and header captures showing the 7:46 a.m. blast and recall, as well as reports of third-party reliance.

59A. TTUHSC also disseminated exclusion directives to affiliate hospitals, foreclosing clinical opportunities and conveying dangerousness—for example, an instruction on November 4, 2023 not to permit Plaintiff into the Covenant Branch office or badge him at any hospital. This constitutes publication by the agency to third parties in connection with a status change.

60. Plaintiff requested a name-clearing hearing on October 19, 2025 and demanded confirmation by October 21, 2025, with a hearing within 14 days; Defendants failed to provide the hearing. Post-publication hearings are proper in the Fifth Circuit. See Wells v. Hico Indep. Sch. Dist., 736 F.2d 243 (5th Cir. 1984); In re Selcraig, 705 F.2d 789 (5th Cir. 1983); White v. Thomas, 660 F.2d 680 (5th Cir. 1981). Plaintiff seeks declaratory relief and damages.

COUNT 5 — First Amendment Retaliation via 42 U.S.C. § 1983 (Damages, Declaratory & Limited Injunctive Relief) — Against Cobbs, Williams, DOE Hearing Officer 1, and DOES 2–10 (individual capacities)

61. At all relevant times, Defendants Cobbs, Williams, DOE Hearing Officer 1, and DOES 2–10 acted under color of state law as officials of a public university. Plaintiff must show (1) protected speech; (2) an adverse action that would deter a person of ordinary firmness; and (3) speech was a substantial or motivating factor. See Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

62. Plaintiff criticized public-health policy and filed grievances. Within days of being told to stop posting, professionalism charges issued; the interim removal/trespass notice cited his speech "context"; and selective enforcement followed. Temporal proximity, contemporaneous references to his posts ("check his Twitter"), and selective departures from rules plausibly show causation.

63. Plaintiff seeks damages and a narrow anti-retaliation injunction barring adverse action for engaging in protected speech about this dispute, litigating this case, or filing/granting public-records requests—without restricting neutrally applied, lawful rules.

63A. Plaintiff intends to continue speaking publicly on the matters at issue and to request records and accommodations, and he faces a credible threat of further retaliatory adverse actions absent prospective injunctive relief.

64. Clearly Established Law / Qualified Immunity. It was clearly established that officials may not take adverse action in retaliation for a student's protected speech on matters of public concern, and that Mt. Healthy burden-shifting applies. On the facts alleged, Defendants are not entitled to qualified immunity at the pleading stage.

COUNT 6 — ADA Title II and § 504 Retaliation/Interference (Damages under § 504; Prospective Relief under Title II) — Against TTUHSC (damages) and Official-Capacity Defendants (prospective relief)

65. The ADA and its regulations prohibit retaliation and interference against individuals who request

accommodations or oppose disability discrimination. 42 U.S.C. § 12203; 28 C.F.R. § 35.134. The Title VI remedies incorporated by § 504 authorize damages against a federal-funds recipient; prospective relief is available against officials under Ex parte Young.

66. After Plaintiff notified SDS of his diagnoses and requested communication supports, Defendants escalated adverse actions—including interim removal, selective rule enforcement, gating of the accommodations content, and status-affecting transcript notations—actions that would deter a reasonable person from engaging in ADA/§ 504 activity and are causally connected to Plaintiff's protected requests.

67. Plaintiff seeks (a) damages against TTUHSC for economic losses proximately caused by retaliation; and (b) prospective injunctive relief under Count 2 to prevent further retaliation or interference and to require Title II-compliant processes going forward.

IMMEDIATE NEED FOR INTERIM RELIEF (Rule 65)

68. Plaintiff seeks a narrowly tailored preliminary injunction to prevent irreparable injury pending judgment. The Canal Authority factors favor relief: (1) a substantial likelihood of success on Count 4 (agency publication, request/denial of name-clearing hearing, transcript notation) and Counts 1–2 (effective-communication failures under OP 77.14 and Title II/§ 504); (2) irreparable injury to professional reputation and training trajectory through continuing publication and transcript notation; (3) the balance of equities favors preventing further dissemination and ensuring a corrective process; and (4) the public interest favors compliance with the Constitution and the ADA. See Canal Authority of the State of Florida v. Callaway, 489 F.2d 567, 572–73 (5th Cir. 1974). Where the current status quo itself inflicts irreparable harm, courts may alter it to prevent injury.

69. Plaintiff requests the Court's straightforward Ex parte Young inquiry for prospective relief against appropriate officials, limited to halting ongoing violations and setting a prompt, ADA-compliant name-clearing process. See Verizon Md., Inc., 535 U.S. at 645–46. Plaintiff is prepared to post a nominal bond in any amount the Court deems appropriate under Rule 65(c).

69A. Pending judgment, the Court should (i) order the Registrar to annotate any issued transcript with "Disputed; correction/annotation process pending," and after the ordered name-clearing process, to append the corrective hearing record (or, if no change is ordered, Plaintiff's statement) to future disclosures; and (ii) enjoin new or continued dissemination of outbound CTW/ban/exclusion directives to affiliates (including badge/door-access restrictions tied to the publications at issue), except as required by law, while the name-clearing process proceeds.

PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in his favor and:

A. Declare that Defendants violated Plaintiff's rights under § 504, Title II, the First Amendment, and the Fourteenth Amendment;

B. Award compensatory damages under § 504 (economic/educational losses—e.g., Title IV balance of $24,316.56, lost scholarship $20,118.11, returned aid $3,524.00, fees/stipends, and other provable economic losses—and, where permitted, nominal damages) against TTUHSC; and award damages (and, where appropriate, punitive damages) under § 1983 against individual-capacity defendants; no punitive or emotional-distress damages are sought under ADA/§ 504;

C. Issue a narrow anti-retaliation injunction barring adverse action for (i) litigating this case, (ii) pursuing public-records requests, (iii) requesting or using ADA/§ 504 accommodations, or (iv) engaging in protected speech about this dispute, while preserving neutrally applied, lawful rules;

D. Enter prospective Title II relief (pursuant to Ex parte Young, 209 U.S. 123 (1908), against officials with a sufficient enforcement connection) requiring compliance with 28 C.F.R. §§ 35.130(b)(7)(i), 35.160, and 35.139(b) in any ongoing or future proceedings; designate TTUHSC's ADA Coordinator (28 C.F.R. § 35.107) as the point-of-contact to implement accommodations across Student Affairs/Registrar/Academic Affairs with timelines and reporting; and require primary consideration for requested auxiliary aids consistent with OP 77.14's LOA framework and five-business-day implementation benchmarks;

E. Order Defendants to schedule and conduct a post-publication name-clearing hearing for Plaintiff within 14 days of the Court's order, with reasonable accommodations as required by Title II and § 504 and with a written decision issued promptly thereafter;

F. Order preservation (not collection at this time) of native hearing-recording files (audio/video), associated hashes, access logs, and chain-of-custody records under a FERPA-aligned protective order; and extend preservation to publication-related ESI (class-wide broadcasts; listserv/LMS/Teams/Slack posts; social-media-linked communications; calendars/Zoom/Teams meeting artifacts; metadata-only CSVs showing Message-ID/from/to/cc/bcc/subject/thread IDs), including suspension of auto-deletion and documentation of systems searched. Plaintiff will file any request for expedited discovery as a separate motion with a supporting brief consistent with the Local Rules. Such preservation and any subsequent productions shall be subject to Fed. R. Civ. P. 5.2 and a FERPA-aligned protective order;

G. Order interim annotation/issuance of a corrected transcript pending the name-clearing hearing (non-stigmatizing, status-neutral — e.g., "Disputed; correction/annotation process pending"), identify prior transcript recipients, and, upon final judgment for Plaintiff on Count 4 and/or ADA/§ 504 claims, expunge or amend the "Administrative Dismissal Effective 01-11-2024" notation and require TTUHSC to notify, at its expense, all third parties to whom the notation or stigmatizing statements were disseminated during the limitations period that the notation has been removed or corrected.

H. Prospectively order that, if TTUHSC conducts any renewed disciplinary adjudication concerning the events at issue, it must do so under an ADA-compliant framework (effective-communication and reasonable-modification measures), with equal time allocation keyed to functional limitations, fair disclosure timelines, and access to a complete, continuous, native record;

I. Award taxable costs as permitted by 28 U.S.C. § 1920 and, if counsel appears, reasonable attorney's fees from counsel's appearance forward under 42 U.S.C. §§ 1988 and 12205 and 29 U.S.C. § 794a(b);

J. Award prejudgment interest as allowed by law and post-judgment interest under 28 U.S.C. § 1961; and

K. Grant all further relief the Court deems just and proper, including nominal damages where compensatory damages may be unavailable. See Uzuegbunam v. Preczewski, 141 S. Ct. 792, 802 (2021).

L. Pending judgment, enjoin dissemination to third-party clinical affiliates of CTW/ban/exclusion directives concerning Plaintiff, except as required by law; require any necessary safety communications to be neutral and non-stigmatizing while the name-clearing process proceeds.

COMPLIANCE NOTE

Filed with a completed Civil Cover Sheet (JS-44) and Certificate of Interested Persons per N.D. Tex. LR 3.1/3.2.

SERVICE NOTE

Service on TTUHSC must comply with Fed. R. Civ. P. 4(j)(2) (or, via Rule 4(e)(1), any state-law method), and service on individuals must comply with Rule 4(e). If Plaintiff elects service pursuant to state law under Rule 4(e)(1) and 4(j)(2), he will effect service on the Texas Attorney General and on the agency as required.

JURY DEMAND

Plaintiff demands a jury on all issues so triable.

DATED: November 7, 2025

Respectfully submitted,

*/s/ Kevin N. Bass*

Kevin N. Bass
3815 130th St. Apt 511
Lubbock, TX 79423
Phone: 512-333-4092
Email: kbassphiladelphia@gmail.com

Pro Se Plaintiff

VERIFICATION (28 U.S.C. § 1746)

I, Kevin N. Bass, declare under penalty of perjury that the foregoing is true and correct based on my personal knowledge, except as to matters stated on information and belief, and as to those I believe them to be true.

Executed on November 7, 2025.

*[signature]*

Kevin N. Bass

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

LUBBOCK DIVISION

| | | |
|---|---|---|
| KEVIN N. BASS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| TEXAS TECH UNIVERSITY HEALTH | § | |
| SCIENCES CENTER; et al., | § | |
| Defendants. | § | |

NOTICE OF CLARIFICATION REGARDING PLEADING CONVENTIONS

Plaintiff Kevin N. Bass respectfully files this Notice solely to clarify the pleading conventions applicable to the concurrently filed Verified Complaint. This Notice does not add or amend any party, claim, factual allegation, or request for relief and is offered only for avoidance of doubt.

Pleading Conventions. Unless otherwise stated, allegations are based on Plaintiff's personal knowledge; where matters lie within Defendants' exclusive control (e.g., listserv membership, message headers, internal logs), allegations are made on information and belief and will likely have evidentiary support after discovery.

Plaintiff respectfully requests that the Court deem this clarification incorporated by reference into the Verified Complaint. No other relief is requested.

Dated: November 7, 2025

Respectfully submitted,

_____

Kevin N. Bass (pro se)
3815 130th St. Apt 511
Lubbock, TX 79423
Phone: 512-333-4092
Email: kbassphiladelphia@gmail.com

CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Notice will be served on each Defendant together with the summons and Verified Complaint in accordance with Fed. R. Civ. P. 4.

_/s/ Kevin N. Bass_
Kevin N. Bass