UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| KEVIN N. BASS,<br><br>Plaintiff,<br><br>v.<br><br>TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER, et al.,<br><br>Defendants. | No. 5:25-CV-244-H |

**ORDER ADOPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF THE MAGISTRATE JUDGE AND OVERRULING THE PLAINTIFF'S OBJECTIONS**

Before the Court are the Findings, Conclusions, and Recommendations (FCR) of United States Magistrate Judge Amanda 'Amy' R. Burch (Dkt. No. 54). Judge Burch recommends granting the defendants' motion to dismiss all claims (Dkt. No. 27) and denying the plaintiff's motion for leave to file a second amended complaint (Dkt. No. 43). The plaintiff, Kevin N. Bass, timely filed objections (Dkt. No. 56).[1]

The Court overrules the objections and adopts the FCR in full. Even viewing the operative complaint and proposed amended complaint in a light most favorable to Bass, he has failed to state claims upon which relief can be granted. Moreover, his proposed amendments do not cure the defects in his claims, rendering them futile. Accordingly, the Court grants the defendants' motion to dismiss (Dkt. No. 27) and denies the plaintiff's motion for leave to file a second amended complaint (Dkt. No. 43).

[1] Bass filed another motion for leave to file a new proposed amended complaint concurrent with his objections to the FCR. *See* Dkt. No. 57. The Court will resolve this motion in a separate order.

## 1. Factual Allegations and Procedural History

### A. Factual Allegations[2]

In 2023, Bass was a medical student at Texas Tech University Health Sciences Center (TTUHSC). Dkt. No. 14 at 7. During his time as a medical student, TTUHSC faculty and staff filed complaints about Bass's conduct. *See id.* at 10–11. Dr. Jennifer Wilson, TTUHSC Vice Dean for Medical Education, filed "multiple professionalism complaints" against Bass and "failed [him] on his pediatrics clerkship without a clear academic basis." *Id.* at 10. Another TTUHSC employee, Assistant Vice Dean for Student Affairs, Rachel Forbes, "filed or prompted" multiple "physical threat and professionalism complaints" against Bass. *Id.* at 11. Moreover, Bass filed six grievances against TTUHSC faculty and staff "for learner mistreatment." *Id.*

Also during medical school, Bass regularly posted on social media and commented "on scientific, medical, and social issues," including criticizing COVID-19 policies, which drew "backlash and reputational pressure." *Id.* at 9. Bass contends that, at the time of the events that form the basis of his suit, TTUHSC was aware of Bass's social media presence and the "controversy surrounding his posts." *Id.*

On November 3, Bass made a social media post that he describes as "a short[,] philosophical reflection on mortality that did not name TTUHSC, identify any person, or call for or threaten violence." *Id.* at 8. Certain faculty and staff at TTUHSC reported that the post caused them to fear for their personal safety, prompting TTUHSC to assess any potential threat. *See id.* (referencing TTUHSC's "Threat Assessment and Interim

---

[2] The factual allegations are taken from Bass's first amended complaint (Dkt. No. 14), which the Court accepts as true when resolving a motion to dismiss. *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

Suspension paperwork" and stating that the TTUHSC Student Conduct Board found the post "disruptive and reasonably perceived as a potential threat to members of the TTUHSC community").

Following the post, TTUHSC initiated disciplinary proceedings and issued an "Emergency Removal" and "Criminal Trespass Warning" to Bass that prohibited him from being on campus during the investigation. *Id.* at 10. TTHUSC issued a campus-wide "BOLO" message that urged facilities' staff to be on the lookout for Bass. *See id.* at 9. Bass contends this ban reached beyond TTUHSC facilities. *Id.* at 10 (alleging that, on November 4, the Assistant Vice Dean for Student Affairs emailed "non-TTUHSC clinical-affiliate personnel" and directed them not to allow Bass at Covenant Medical Center facilities).

TTHUSC scheduled a disciplinary hearing on Monday, December 11, 2023. *See id.* at 6. Bass asserts that the Student Conduct Administrator, Dr. David Trotter, told Bass that, at the hearing, the Board[3] would first "hear and decide" the six grievances Bass had lodged against TTUHSC. *Id.* at 7; 11. Trotter stated that only after Bass's grievances were decided would the Board consider the complaints about Bass's conduct. *Id.* at 7. Bass prepared for the hearing "in reliance on this promised format." *Id.* Additionally, Trotter told Bass that he could resolve the disciplinary investigation by withdrawing from TTUHSC with no possibility of re-enrollment, but Bass refused. *Id.*

Prior to the hearing, Bass and his counsel notified TTHUSC's Student Disability Services (SDS) that he had a "neurodevelopmental disability with associated anxiety" and

[3] Bass elsewhere identifies the Student Conduct Board as the entity that "unanimously recommended [his] non-academic dismissal" from TTUHSC. *See* Dkt. No. 14 at 12. Thus, the Court takes Bass's references to "the Board" to mean the Student Conduct Board. This Board comprised the Associate Dean of Admissions, Dr. Felix Morales; two faculty physicians; and two fourth-year medical students. *Id.*

submitted a neuropsychological evaluation. *Id.* at 6. On December 8, he "called SDS to initiate accommodations" and requested a Letter of Accommodation that would ensure "communication supports" at the hearing—set to occur in less than one business day from the time of the request—"including limited attorney-assisted questioning to cue/clarify." *Id.*

An attorney and "outside Hearing Officer," Darren Gibson, conducted the hearing on December 11. *Id.* at 5. The hearing lasted approximately 14 hours, and 11 witnesses, including Bass, provided testimony. *Id.* at 7. However, the hearing did not follow the format promised by Trotter and, instead, "TTUHSC . . . stacked hours of adverse testimony and conduct allegations before allowing any meaningful opportunity for [Bass] to present his grievances or a coherent response." *Id.*

Bass contends that Gibson "lacked neutrality and operated under constraints that materially favored the administration." *Id.* Gibson "acknowledged the SDS process on the record," admitted a redacted version of Bass's neuropsychological evaluation "excluding the accommodations section" as outside of the hearing's scope, and barred Bass's counsel from directly questioning witnesses. *Id.* Bass asserts that Gibson violated the rules governing the hearing because he "barred contemporaneous objections; required counsel's questions to be submitted in writing; . . . limit[ed] [Bass's] questioning for 'relevance'; and applied time limits and sequencing asymmetrically against [Bass]." *Id.* Additionally, Gibson "denied requested separate hearings; restricted defense witnesses; [and] accepted late/redacted evidence favorable to [TTUHSC] while excluding comparable . . . evidence" submitted by Bass. *Id.* at 8, 11.

After the hearing, the Board unanimously recommended Bass's non-academic dismissal from TTUHSC School of Medicine. *Id.* at 12. Bass's transcript now includes the

notation "Administrative Dismissal Effective 01112024," which has caused third parties to deny him certain unidentified opportunities. *Id.* at 11. Bass maintains that, in connection with his dismissal, Forbes sent a class-wide email broadcasting his dismissal and directing his classmates to check Bass's social media. *Id.* Additionally, all six of Bass's grievances "were reviewed and rejected by four different administrators" because they lacked evidence or violated TTUHSC policies. *Id.*

**B. Procedural History**

Bass, proceeding pro se, filed suit in November 2025 and amended his complaint shortly thereafter. Dkt. Nos. 1; 14. Bass sues TTUHSC and several of its employees in their official capacities—Amanda McSween, the registrar; Dr. Lauren Cobbs, Senior Associate Dean for Student Affairs; Dr. Simon Williams, Senior Associate Dean for Academic Affairs; Tamara Mancini, Director of Student Disability Services; Mia Myers, Associate Managing Director of Student Financial Aid; Dr. Lori Rice-Spearman, President; Dr. Darrin D'Agostino, Chief Academic Officer; and an unidentified "TTUHSC ADA Title II Coordinator." Dkt. No. 14 at 1–2. Additionally, Bass sues multiple people in their individual capacities, including Darren Gibson, the hearing officer who presided at Bass's disciplinary hearing; Dr. Jennifer Wilson, Vice Dean for Medical Education, TTUHSC Covenant Branch Campus; Rachel Forbes, Assistant Vice Dean for Student Affairs, TTUHSC Covenant Branch Campus; and "DOES 2–10," who represent "unidentified TTUHSC officials who participated in the events" alleged in Bass's complaint. *Id.* at 2, 5–6.

In the amended complaint Bass asserts violations of: (1) Section 504 of the Rehabilitation Act of 1973 (RA) by TTUHSC; (2) the Americans with Disabilities Act (ADA) by the unidentified ADA coordinator, McSween, Cobbs, Williams, Mancini, Myers,

Rice-Spearman, and D'Agostino in their official capacities; (3) Bass's Fourteenth Amendment procedural due process rights by Cobbs, Williams, Gibson, and DOES 2–10 in their individual capacities; (4) Bass's Fourteenth Amendment liberty interest by McSween, Forbes, and DOES 2–10 in their individual capacities; and (5) Bass's First Amendment free-speech rights by Cobbs, Williams, Gibson, Wilson, Forbes, and DOES 2–10 in their official capacities. *Id.* at 13–18. Bass seeks monetary damages as well as injunctive[4] and declaratory relief. *Id.* at 19–20.

The defendants move to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) and assert sovereign and qualified immunity. Dkt. No. 27. The motion is fully briefed, and all parties ask the court to consider materials outside of the pleadings when resolving the motion. *See* Dkt. Nos. 27; 27-1 to 27-12; 33; 33-1; 33-2; 38. Additionally, Bass seeks leave to file a second amended complaint. Dkt. No. 43.[5] The defendants responded, and Bass replied. Dkt. Nos. 48; 49. Both motions are ripe for review.

On July 14, 2026, Judge Burch issued her FCR in which she recommends that the Court dismiss Bass's ADA claims and claim for declaratory relief without prejudice and dismiss all other claims with prejudice. Dkt. No. 54 at 56. Additionally, Judge Burch recommends that the Court deny Bass leave to amend because the proposed amendments would be futile. *Id.* Bass timely filed objections to the FCR. Dkt. No. 56.

---

[4] Bass originally sought a preliminary injunction, Dkt. No. 14 at 18–19, but subsequently withdrew this request, Dkt. No. 24 at 1. Accordingly, the Court denied the motion for a preliminary injunction as moot. Dkt. No. 28.

[5] Upon Bass filing this second motion for leave to amend on March 31, 2026, Judge Burch denied the first motion for leave to amend (Dkt. No. 26) as moot and evaluated the more recent motion for leave to amend (Dkt. No. 43) in connection with the motion to dismiss. Dkt. No. 55.

**2. Legal Standard for Objections**

A party who disputes any part of a Magistrate Judge's FCR must file specific written objections within 14 days after being served with a copy. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). As for portions where no specific objections are filed within the 14-day period, the Court reviews the Magistrate Judge's findings, conclusions, and recommendations only for plain error. *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 502 (5th Cir. 2020).

When a party files objections, the Court must review those objected-to portions de novo. 28 U.S.C. § 636(b)(1); *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 646 (5th Cir. 1994). The district court may then accept, reject, or modify the recommendations or findings, in whole or in part. Fed. R. Civ. P. 72(b)(3). Objections to the FCR must be "specific"; they must "put the district court on notice of the urged error." *Williams v. K&B Equip. Co.*, 724 F.2d 508, 511 (5th Cir. 1984). "[A]n objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found." *Thompson v. Bumpas*, No. 4:22-CV-640, 2022 WL 17585271, at *1 (N.D. Tex. Dec. 12, 2022) (citing *United States v. Mathis*, 458 F. Supp. 3d 559, 564 (E.D. Tex. 2020)).

The district court need not consider "[f]rivolous, conclusive[,] or general objections." *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)). Moreover, "[i]t is well settled that issues raised for the first time in objections to a magistrate judge's report are deemed not properly before the district court." *K Invs., Inc. v. B-Gas Ltd.*, No. 21-40642, 2022 WL

964210, at *5 (5th Cir. Mar. 30, 2022) (first citing *Cupit v. Whitley*, 28 F.3d 532, 535–36 n.5 (5th Cir. 1994); then citing *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992); and then citing *Harrison v. Smith*, 83 F. App'x 630, 632 (5th Cir. 2003)).

### 3. Analysis

The Court overrules Bass's objections and adopts the FCR in full. Therefore, the Court grants the defendants' motion to dismiss and denies the plaintiff's motion for leave to file a second amended complaint.

#### A. The Court finds no plain error in the unobjected-to portions of the FCR and adopts those portions of the FCR.

Magistrate Judge Burch first concluded that the materials outside of the pleadings that the parties cited in their motion-to-dismiss briefing were not attached to the first amended complaint or central to Bass's claims. Dkt. No. 54 at 8–10. Thus, Judge Burch declined to consider these materials when evaluating the motion to dismiss. *See id.* Judge Burch also found that TTUHSC was not entitled to sovereign immunity from claims under the Rehabilitation Act. *Id.* at 11 n.3.

Bass does not object to the exclusion of materials outside of the pleadings. Additionally, as explained *infra* Analysis 3.B.ii.a, Bass does not object to dismissal of any RA disability-discrimination claim. Nor does he object to dismissal of his request for declaratory relief pursuant to his RA claim. *See* Dkt. No. 54 at 21. The Court has reviewed all unobjected-to portions of the FCR for plain error. Finding none, the Court accepts and adopts all unobjected-to portions of the FCR.

### B. The Court overrules Bass's objections and grants the defendants' motion to dismiss.

The defendants seek dismissal of all claims pursuant to Rule 12(b)(1) and (6), asserting that TTUHSC and the official-capacity defendants are entitled to sovereign immunity, the individual defendants are entitled to qualified immunity, and, apart from the immunity defenses, Bass has also failed to state claims upon which relief can be granted. The Court agrees that Bass's claims fail at the pleading stage, overrules his objections, and grants the defendants' motion to dismiss.

#### i. Motion to Dismiss Legal Standards

##### a. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject-matter jurisdiction of the district court to hear a case. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). Claims barred by sovereign immunity are properly dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction. *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996). "[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Lack of subject-matter jurisdiction may be found by considering: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *King v. U.S. Dep't of Veteran Affs.*, 728 F.3d 410, 413 (5th Cir. 2013) (quoting *Ramming*, 281 F.3d at 161). Therefore, "[i]n considering a challenge to subject matter

jurisdiction, the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (quoting *Krim*, 402 F.3d at 494).

**b. Federal Rule of Civil Procedure 12(b)(6)**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. S. A., Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). If a complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In resolving a motion to dismiss, a court must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, LLC*, 780 F.3d 304, 306 (5th Cir. 2015) (cleaned up) (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)). But a court should not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim to relief. *Iqbal*, 556 U.S. at

678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In considering a Rule 12(b)(6) motion, "a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). If a court is presented with and does not exclude matters outside the pleadings, it must convert the motion to a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, a district court may consider certain information outside of the pleadings without converting the motion "if that evidence is either (a) a document attached to the Rule 12(b)(6) motion, referred to in the complaint, and central to the plaintiff's claim; or (b) a matter subject to judicial notice under Federal Rule of Evidence 201." *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

**ii. The Court concludes that Bass has not sufficiently stated a Rehabilitation Act claim.**

Bass alleges RA claims against TTUHSC for failure to accommodate, retaliation, and interference, as well as related requests for compensatory and nominal damages and declaratory relief. For the following reasons, the Court dismisses Bass's RA claims.

**a. Failure-to-accommodate Claim**

As a threshold matter, the Court agrees that Bass's complaint is not clear as to whether he is asserting a disability-discrimination claim, a failure-to-accommodate claim, or both. *See* Dkt. No. 54 at 11 (citing Dkt. No. 14 at 13). Bass indicates in his objections that he intends to proceed "expressly on the accommodation theory." Dkt. No. 56-1 at 11. Accordingly, the Court evaluates Bass's objections with respect to a failure-to-accommodate RA claim.

"[A] plaintiff must prove the following . . . elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Amedee v. Shell Chem., LP*, 953 F.3d 831, 837 (5th Cir. 2020) (quoting *Feist v. La., Dep't of Justice, Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)).[6] Judge Burch concluded that Bass failed to plead facts that, if true, sufficiently alleged elements two and three of a failure-to-accommodate claim. Dkt. No. 54 at 15–19.

Bass first asserts that Judge Burch stated that a failure-to-accommodate claim does not require a plaintiff to prove that a disability was the sole cause of the discrimination, but then concluded his failure-to-accommodate claim failed on this basis. *See* Dkt. No. 56-1 at 11. This is an incorrect reading of the FCR, which includes a discussion of whether Bass's asserted disability was the sole cause of the alleged discrimination, but limits that discussion to Bass's purported disability-discrimination claim—not his failure-to-accommodate claim. *See* Dkt. No. 54 at 13–15. As to Bass's failure-to-accommodate claim, Judge Burch concluded that Bass had not sufficiently pled elements two and three—that TTUHSC knew of the disability and failed to make a reasonable accommodation. *Id.* at 16–19. Thus, the Court overrules Bass's objection that "[t]he FCR's causation reasoning" as applied to any disability-discrimination claim "conflicts with its own footnote 4" because Judge Burch did not apply the sole-cause theory to Bass's failure-to-accommodate claim. Dkt. No. 56-1 at 11; *see also* Dkt. No. 54 at 15–19.

[6] In analyzing the RA failure-to-accommodate claim, the Court may consult authorities that evaluate both the RA and ADA because "[j]urisprudence interpreting either section is applicable to both." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).

Next, Bass objects that Judge Burch improperly concluded that he lacked meaningful access to the disciplinary hearing. Dkt. No. 56-1 at 11–12. Again, Bass misstates the FCR. Judge Burch concluded that Bass has not alleged denial of access "solely by reason of his disability" because Bass asserts various other reasons for such purported denial. Dkt. No. 54 at 13–15. Accordingly, assuming without deciding that Bass was denied meaningful access to the hearing, Judge Burch's conclusion that Bass failed to allege that his disability was the sole cause of such denial remains undisturbed. In any event, this analysis pertained to a disability-discrimination claim—a theory Bass has affirmatively abandoned. *See* Dkt. Nos. 56-1 at 11; 54 at 13–15. Thus, the Court overrules this objection.

Bass next objects to Judge Burch's conclusion that he failed to plead element three of his claim because TTUHSC provided the preferred accommodation at the hearing. Dkt. No. 56-1 at 12. Judge Burch observed that Bass "does not explain what his requested accommodation" of "limited attorney-assisted questioning to cue/clarify" "even means." Dkt. No. 54 at 15–16. She then concluded that "it appears TTUHSC provided the preferred accommodation" at the hearing by allowing Bass's attorney to submit written questions to witnesses and permitting the attorney to assist with Bass's direct questioning of witnesses. *Id.* at 16. Bass argues that this conclusion contradicts the allegation in his complaint that Gibson, the hearing officer, barred Bass's counsel from "questioning witnesses directly even as a communication aid." Dkt. No. 56-1 at 12 (quoting Dkt. No. 54 at 4); *see also* Dkt. No. 14 at 7. The Court does not see such contradiction. Gibson's disallowance of direct questioning by Bass's attorney does not mean that allowing Bass's attorney to assist Bass in his own direct questioning as a communication aid was not a reasonable accommodation.

Even if Bass has properly pled that he was denied a reasonable accommodation by disallowing direct questioning by his attorney, his claim still fails because he did not sufficiently plead element two—that "the disability and its consequential limitations were 'known.'" *Amedee*, 953 F.3d at 837 (quoting *Feist*, 730 F.3d at 452). Judge Burch concluded that Bass failed to plead facts that show he advised TTUHSC of his disability's alleged limitations. Dkt. No. 54 at 17. In objecting to this conclusion, Bass relies only on materials outside of the pleadings—materials that Judge Burch declined to consider and this Court likewise declines to consider. *See* Dkt. No. 56-1 at 14; *see also supra* Analysis § 3.A; Dkt. No. 54 at 8–10. Because Bass has not pointed to factual allegations in his complaint that TTUHSC had knowledge of his disability's limitations, he has failed to sufficiently plead element two of his failure-to-accommodate claim. This objection is overruled.

Therefore, Bass has failed to sufficiently plead elements two and three of his RA failure-to-accommodate claim. The Court overrules his objections, adopts the FCR's recommendation, and dismisses this claim.

**b. Intentional-Discrimination Claim**

Bass next objects to Judge Burch's conclusion that his claims for compensatory and nominal damages should be dismissed because he has not pled that TTUHSC intentionally discriminated against him. *See* Dkt. No. 56-1 at 15–16. Again, Bass cites matters outside of his live pleading—namely, his proposed amended complaint—which the Court does not consider when evaluating his objections. *See supra*, Analysis § 3.A; *Goodson v. City of Dall.*, 3:25-CV-816, 2025 WL 1397538, at *1 (N.D. Tex. May 14, 2025) (stating that the magistrate judge properly evaluated the live complaint and not the proposed amended complaint when issuing an FCR).

But even if the Court were to consider the allegations in the proposed amended complaint, Bass does not allege facts that, when viewed in a light most favorable to him, state a claim for intentional discrimination by TTUHSC. A showing of intentional discrimination requires the plaintiff to allege "that the defendant at least ha[d] actual notice." *Smith v. Harris Cnty.*, 956 F.3d 311, 318 (5th Cir. 2020) (quoting *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 575 (5th Cir. 2018)). Bass alleges that the hearing officer, Gibson, declined to present his requested accommodations to the Board for consideration. Dkt. No. 56-2 at 10. More specifically, Gibson convened with Bass's counsel and TTUHSC's general counsel during the disciplinary hearing and then made the decision about which of the requested accommodations would be allowed. *Id.* And as Judge Burch correctly notes, "Bass's requests for accommodation at the hearing to officials unaffiliated with the ADA office—i.e., SDS—does not impute knowledge to TTUHSC." Dkt. No. 54 at 19 (citing *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1033 (5th Cir. 2022)).

Additionally, Bass objects that the FCR "does not address" the holding in a recent Supreme Court decision, *A. J. T. ex rel. A. T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335 (2025). Dkt. No. 56-1 at 16. Foremost, the Court need not consider such nonspecific objections. Even so, this holding does not disturb the FCR. *A. J. T.* states that "ADA and Rehabilitation Act claims based on educational services should be subject to the same standards that apply in other disability[-]discrimination contexts." *A. J. T.*, 605 U.S. at 345. "After *A. J. T.*, 'the appropriate standard for Section 504 claims is deliberate indifference'—nothing more and nothing less." *Mendoza v. Amarillo Indep. Sch. Dist.*, No. 2:24-CV-169, 2026 WL 1834784, at *5 (N.D. Tex. June 25, 2026) (quoting *W.H. ex rel.*

*Larry G. v. Fort Bend Indep. Sch. Dist.*, No. 4:24-CV-1515, 2025 WL 2147067, at *20 (S.D. Tex. July 29, 2025)). But this is the standard for stating an RA claim—not the standard for recovering compensatory and nominal damages, which requires a showing of intentional discrimination. *See Francois v. Our Lady of the Lake Hosp., Inc.*, 8 F.4th 370, 379 (5th Cir. 2021) (requiring a showing of intentional discrimination to recover nominal damages in an RA disability-discrimination claim); *Harris Cnty.*, 956 F.3d at 318 ("Even when plaintiffs successfully prove a disability-discrimination or a failure-to-accommodate claim, they may only recover compensatory damages upon a showing of intentional discrimination." (internal quotation marks and citation omitted)). This objection is also overruled.

Accordingly, the Court dismisses Bass's request for nominal and compensatory damages for failure to plead facts of intentional discrimination.

**c. Retaliation and Interference Claims**

Next, Bass objects to the dismissal of his RA retaliation and interference claims. Dkt. No. 56-1 at 16–18. Bass again attempts to cure any deficiencies in these claims by pointing to newly pled allegations in his proposed amended complaint, and, again, the Court declines to consider allegations outside of the operative pleading. Because this is the only basis on which Bass objects to the dismissal of his RA interference claim, the Court overrules the objection and dismisses this claim.

With respect to an RA retaliation claim, Bass also objects to Judge Burch's conclusion that he failed to plead facts sufficient to establish a causal link between requesting accommodations and denial of those accommodations at the hearing. To establish a prima facie cause for retaliation, Bass must plead facts that show "(1) [he] engaged in an activity protected by the Rehabilitation Act; (2) [TTUHSC] took an adverse

employment action against him; and (3) a casual connection existed between the adverse employment action and the protected activity." *Grodman v. Tex. Tech Univ. Health Scis. Ctr.*, 816 F. Supp. 3d 602, 622 (N.D. Tex. 2025) (citing *Calderon v. Potter*, 113 F. App'x 586, 592 (5th Cir. 2004)).

Bass asserts that the temporal proximity between the two events—approximately three days—"supports a causal inference." Dkt. No. 56-1 at 17. As this Court has stated previously when evaluating an RA retaliation claim,

> [a]lthough it is not dispositive, *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013), temporal proximity between the protected activity and the adverse . . . action is often used to establish the [causal] connection for the prima facie case of retaliation. *See, e.g., Milteer v. Navarro County*, 652 F. Supp. 3d 754, 766–67 (N.D. Tex. 2023). Typically, for a plaintiff to meet his initial burden based on temporal proximity, the protected activity and adverse action must be 'very close' in time. *See* [*Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020)] (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)).

*Grodman*, 816 F. Supp. 3d at 622. Here, a span of approximately three days is so close that the Court determines Bass has alleged facts that, when viewed in a light most favorable to him, plausibly allege the causation element of his RA retaliation claim. Even so, this alone does not save his claim.

Bass pleads retaliation by TTUHSC and the "official capacity" defendants. Bass asserts that Gibson, acting on behalf of TTUHSC, disallowed certain evidence at the disciplinary hearing in retaliation for Bass's eleventh-hour accommodation request to SDS the Friday before the hearing. In his objections, Bass more specifically identifies the retaliatory conduct as: "the hearing officer excluded the accommodation documentation, redacted its recommendations specifically, and barred the evaluator from testifying." Dkt. No. 56-1 at 17.

But even assuming Gibson had knowledge of Bass's report to SDS and engaged in this conduct as retaliation for that protected activity, disallowance of this documentation and testimony must qualify as a materially adverse action to state a retaliation claim. *See Jeudy v. Hous. Cmty. Coll.*, No. 4:23-CV-2758, 2026 WL 675683, at *4 (S.D. Tex. Mar. 2, 2026). A materially adverse action is one that would dissuade a reasonable person from engaging in the protected activity—in this instance, requesting accommodations. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "The purpose of this objective standard is 'to separate significant from trivial harms' . . . ." *Id.* (quoting *Burlington Northern*, 548 U.S. at 68)).

Here, the Court concludes that Bass does not allege a materially adverse action. Bass does not allege that Gibson excluded the neuropsychological evaluation that recommended communication supports altogether or denied all requested accommodations. Rather, Bass alleges that Gibson admitted a redacted version of the evaluation that eliminated information and testimony that Gibson found "outside the Board's scope." Dkt. No. 14 at 6–7. And it is undisputed that Gibson granted certain accommodations at the hearing, such as allowing Bass's counsel to submit written questions and assist Bass in questioning witnesses. *See id.*; *see also* Dkt. No. 54 at 16. That the hearing officer made decisions about evidence that Bass found harmful to his request for certain accommodations, yet allowed other accommodations, is not a materially adverse action that would prevent a reasonable student from requesting accommodations at a disciplinary hearing. *Cf. Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 250 (5th Cir. 2025) (quoting *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009) ("The ADA provides a right to reasonable accommodation, not to

the employee's preferred accommodation."). Thus, even if the temporal proximity is enough to satisfy the causation element at the pleading stage, Bass's failure to allege an adverse action is fatal to his RA retaliation claim.

In sum, the Court overrules Bass's objections and dismisses his RA claims for failure to accommodate, interference, and retaliation, and his related requests for compensatory and nominal damages.

**iii. The Court concludes that the individual defendants are entitled to qualified immunity from Bass's Section 1983 claims.**

Pursuant to 42 U.S.C. § 1983, Bass alleges Fourteenth Amendment procedural due process and "stigma-plus" claims and a First Amendment retaliation claim against the individual defendants. The Court agrees with the FCR's conclusion that the individual defendants are entitled to qualified immunity from these claims.

**a. Qualified Immunity Legal Standard**

"Government officials are entitled to immunity from § 1983 suits for damages arising from their duties unless the plaintiff can show '(1) that the [official] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was clearly established at the time.'" *Hughes v. Garcia*, 100 F.4th 611, 618 (5th Cir. 2024) (citation modified) (quoting *Ramirez v. Escajeda*, 921 F.3d 497, 500 (5th Cir. 2019)). When a defendant asserts qualified immunity, district courts "have discretion to decide which prong of the qualified-immunity analysis to address first." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). In brief, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Hughes*, 100 F.4th at 618 (quoting *Malley*, 475 U.S. at 341).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Savage v. Westcott*, 152 F.4th 687, 691 (5th Cir. 2025). Accordingly, "[q]ualified immunity protects against novel theories of statutory or Constitutional injury." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). "[A]ny purported harm must stem from rights clearly established under law at the time of the incident, and the contours of that right must be sufficiently clear such that a reasonable [official] would understand that his actions were violative of the right at issue." *Id.*

**b. Procedural Due Process Claim**

Judge Burch concluded that Bass did not allege a violation of his due process rights and, even if he had, the individual defendants are entitled to qualified immunity because it was not clearly established that the defendants' conduct was unconstitutional. Dkt. No. 54 at 31–40. Even assuming Bass could allege a procedural due process violation, the Court agrees that any such constitutional right was not clearly established at the time of the alleged conduct.[7]

As a procedural matter, Bass first contends that the Court cannot dismiss a claim on the basis of qualified immunity without allowing him to file a reply under Federal Rule of Civil Procedure 7. Dkt. No. 56-1 at 22–23. Bass again misunderstands the applicable law and procedural posture of the case. By Rule 7's plain language, a reply to an answer is only

[7] Because the Court finds the plaintiff's objections to the FCR's qualified-immunity determination meritless and agrees that the individual defendants are entitled to qualified immunity on the procedural due process claim, it need not reach the plaintiff's objections to the determination that he did not sufficiently allege a due process violation.

required if a court orders a plaintiff to submit one. *See* Fed. R. Civ. P. 7(a)(7). Here, the parties have each briefed the issue of qualified immunity in the motion to dismiss, response, and reply, *see* Dkt. Nos. 27; 33; 38, and a Rule 7 reply to the defendants' assertion of qualified immunity is neither necessary nor warranted. This objection is overruled.

Bass next contends that the alleged procedural due process violation was clearly established at the time of the violation. More specifically, he contends that it was clearly established that "a student facing expulsion may not be denied all defense witnesses while the prosecuting institution presents ten, or that the institution's paid advocate may not write the tribunal's decision." Dkt. No. 56-1 at 23. As the FCR correctly notes, Bass only alleges that Gibson excluded two witnesses—his neuropsychologist and Dr. Trotter—both of whom Bass contends were offering testimony on matters other than the conduct violations asserted against him. *See* Dkt. No. 54 at 35–36 (citing Dkt. No. 14 at 6–8, 12). And Bass alleges that he was able to offer his own testimony. Dkt. No. 14 at 7. Thus, his contention that there was a "complete denial of defense witnesses," Dkt. No. 56-1 at 23, is disingenuous. Bass was able to testify on his own behalf and does not allege that he attempted to present other witnesses in defense of the misconduct allegations. Moreover, he does not allege in the operative pleading that Gibson authored the letter from the Board with the decision to dismiss him from TTUHSC. Rather, this allegation appears in his objections and proposed pleadings, which are not properly before the Court.

But even so, Bass fails to identify any authority that shows such violations were clearly established. He makes the conclusory assertion that such violations were "obvious applications of Dixon and Withrow," Dkt. No. 56-1 at 23, which the Court takes to mean *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150 (5th Cir. 1961), and *Withrow v. Larkin*, 421 U.S.

35 (1975). While these cases generally stand for the proposition that students facing possible expulsion are entitled to notice and an opportunity to be heard by an unbiased decisionmaker, neither provides "adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Babinski v. Sosnowsky*, 79 F.4th 515, 520 (5th Cir. 2023) (quoting *Walsh v. Hodge*, 975 F.3d 475, 485–86 (5th Cir. 2020)). That is, even assuming Bass's allegations are true, neither case puts the defendants on notice that disallowing witnesses who are not testifying about the misconduct at issue in a disciplinary hearing—when the student is able to testify on his own behalf—violates the student's procedural due process rights. Nor do they clearly establish that allowing the hearing officer to author a decision on behalf of the decisionmaker makes the decisionmaker biased or otherwise constitutes a procedural due process violation.

Accordingly, because Bass has not shown that the defendants' conduct violates clearly established law, the Court overrules his objections and dismisses his claim for violation of his procedural due process rights.

**c. Stigma-Plus Claim**

Bass next objects that the FCR incorrectly found that he has not pled a false communication about him by a government actor that resulted in a stigma. Dkt. No. 56-1 at 27. "To make out a stigma-plus claim, a plaintiff must demonstrate that: (1) he has suffered a stigma from some government action; plus (2) he experienced the extinguishment of a right of status previously recognized by state law." *Babinski*, 79 F.4th at 519 n.3. The stigma must be caused by "concrete, false factual representations or assertions, by a state actor, of wrongdoing on the part off the claimant." *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991). "[F]or a charge to be stigmatizing it must be worse than

merely adverse; it must be such as would give rise to 'a badge of infamy, public scorn, or the like.'" *Blackburn v. City of Marshall*, 42 F.3d 925, 936 (5th Cir. 1995) (internal quotation marks omitted) (quoting *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 & n.16 (5th Cir. 1984)).

Foremost, Bass again relies on materials outside of the operative pleading that are not properly before the Court to allege that the individual defendants made false factual statements that resulted in a stigma. *See* Dkt. No. 56-1 at 27 (citing Bass's proposed amended pleadings). In evaluating only his operative pleading, the Court agrees that Bass does not sufficiently plead any false statements of fact. He contends the government actions that caused the stigma were: (1) "a January 7, 2024[,] class-wide broadcast stating that the class was 'one student lighter than last week' and directing recipients to 'check [Bass's] Twitter'"; (2) an "Administrative Dismissal Effective 01-11-2024" notation on his transcript; and (3) a "campus-wide and affiliate-hospital BOLO/ban and exclusion directives suggesting [Bass] was dangerous." Dkt. No. 14 at 16. But Bass does not allege that the government actors stated that he was dangerous; rather, Bass pleads that "[t]hese publications coincided with the loss of student status and conveyed dangerousness and unfitness." *Id.*

Even if the Court were to consider matters outside of his operative pleading—namely, the language in the BOLO that Bass "made threatening posts on social media," Dkt. No. 32-2 at 5—Bass's own pleadings allege that he made a post that certain TTUHSC faculty and staff, as well as the Board, perceived as threatening. *See* Dkt. No. 14 at 8. Thus, the BOLO flyer communicating that Bass was banned from campus and facilities for making a threatening social media post when, in fact, TTUHSC faculty and

staff believed that the post was threatening does not qualify as a "false factual representation[]." *San Jacinto Sav. & Loan*, 928 F.2d at 701. Nor is it one that would give rise to "a 'badge of infamy,' public scorn, or the like," *Blackburn*, 42 F.3d at 936 (quoting *Wells*, 736 F.2d at 256 & n.16), as the same communication indicates that it should be "place[d] . . . in a secure notebook" and not posted for public viewing, Dkt. No. 32-2 at 5.

Accordingly, Bass fails to state a stigma-plus due process claim and, consequently, cannot state a constitutional violation and overcome the individual defendants' assertion of qualified immunity. The Court dismisses Bass's stigma-plus claim.

#### d. First Amendment Retaliation Claim

Likewise, Bass cannot overcome the individual defendants' assertion of qualified immunity from his First Amendment retaliation claim. To plead a First Amendment retaliation claim, Bass must plead facts that state "(1) [he was] engaged in constitutionally protected activity, (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Bass objects to Judge Burch's determinations that Bass did not sufficiently plead the first and third elements of his claim and that the individual defendants are entitled to qualified immunity because the unlawfulness of their conduct was not clearly established. Dkt. No. 56-1 at 23–26.

"Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be 'on notice that their conduct is unlawful.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (quoting *Saucier v. Katz*, 533

U.S. 194, 206 (2001)). Even assuming Bass could state a First Amendment retaliation claim, he has not identified authority that would put the individual defendants on notice that their conduct was unlawful and overcome their qualified immunity defense.

Bass identifies *Bailey v. Iles*, 87 F.4th 275 (5th Cir. 2023), as authority that clearly established that the defendants' conduct was unlawful. *See* Dkt. No. 56-1 at 26. But *Bailey* states only that "it was clearly established that [the plaintiff's] Facebook post did not fit within one of the narrow categories of unprotected speech, like incitement or true threats." *Id.* at 289. The plaintiff in *Bailey* was arrested as a direct result of a Facebook post, which the Fifth Circuit determined was protected speech. *See id.* at 281–85, 289–90. The situation at hand involves allegations in addition to engaging in potentially protected speech. As Judge Burch correctly stated, Bass "points to no case giving [the defendants] 'fair warning' that they could not lawfully discipline a medical student who was facing conduct complaints and negative evaluations at the same time the student was making controversial social media posts and who then made a post that the school community perceived as threatening." Dkt. No. 54 at 45 (quoting *Babinski*, 79 F.4th at 524).

Thus, the Court concludes that, even if Bass could plead the elements of a First Amendment retaliation claim, the unlawfulness of the defendants' conduct was not clearly established at the time of the alleged retaliation. Accordingly, the defendants are entitled to qualified immunity, and the Court dismisses this claim.

**iv. The Court concludes that TTUHSC is entitled to sovereign immunity from Bass's ADA claims.**

Bass next objects to the conclusion that his ADA claims seeking injunctive relief are barred by sovereign immunity because he asserts no ongoing violation. *See* Dkt. No. 56-1 at 27–28. The Court agrees with Judge Burch that Bass fails to allege such ongoing violation.

TTUHSC is a state agency entitled to sovereign immunity from suits for money damages or injunctive relief unless it has waived such immunity. *Sissom v. Univ. of Tex. High Sch.*, 927 F.3d 343, 347–49 (5th Cir. 2019). However, "[t]he *Ex parte Young* exception [to state immunity] 'permits suits for prospective . . . relief against state officials acting in violation of federal law.'" *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)). "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019) (quoting *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)). Thus, to succeed on such a claim, the plaintiff must assert an ongoing violation of federal law by a state actor. *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020).

Bass contends that "the continuing refusal of a name-clearing hearing" and "each enrollment-verification response" are continuing violations of the ADA. Dkt. No. 56 at 5. The Court agrees with Judge Burch that neither of these alleged injuries, even taken as true, allege a continuing violation of the ADA. *See* Dkt. No. 54 at 24–25. Bass's ADA allegations stem from the alleged denial of accommodations at the disciplinary hearing, *see* Dkt. No. 14 at 13–15, which are distinct from his allegations related to the alleged stigmatizing publications. Nothing about Bass's allegations that TTUHSC refused a name-clearing hearing and continues to distribute his transcript that includes the dismissal notation allege a continuing violation of the ADA's reasonable-accommodation requirements. Thus, with respect to the injunctive relief requested in connection with his

ADA claim, Bass's allegations fail to meet the case or controversy requirement of Article III standing. *Waller*, 922 F.3d at 603.

Without an allegation of a continuing violation, Bass's request for injunctive relief is barred by sovereign immunity. The Court thus dismisses Bass's request for injunctive relief related to his ADA claims.

**v. The Court overrules Bass's objection to the FCR's "background characterization."**

Bass also objects to a statement included in the first paragraph of the FCR—that "[h]e apparently engaged in objectionable conduct." Dkt. No. 54 at 1. Federal Rule of Civil Procedure 72(b)(2) allows a party to "object[] to the proposed findings and recommendations." The introductory language is neither a finding nor a recommendation, nor does it have any bearing on the Court's disposition of Bass's claims. Accordingly, the Court overrules this objection.

* * *

For all of these reasons, the Court concludes that Bass has not stated any viable claims and grants the defendants' motion to dismiss (Dkt. No. 27).

**C. The Court overrules Bass's objection to the conclusion that his proposed amendments are futile and denies his motion for leave to amend.**

Judge Burch next recommends that the Court deny Bass's motion for leave to amend (Dkt. No. 43) on the basis of futility. Bass objects to this recommendation, arguing that the amendments in his proposed complaint (Dkt. No. 43-1) cure any defects in each of his claims.

Bass's objections are either too general and conclusory to warrant evaluation by the Court or fail to overcome the deficiencies in his operative pleading. Because his proposed

amendments are ultimately futile, the Court overrules his objections and denies his motion for leave to file a second amended complaint.

**i. Federal Rule of Civil Procedure 15**

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend a pleading "once as a matter of course" within 21 days of serving the pleading or receiving the opposing party's responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). When evaluating whether to allow leave to amend under Rule 15, "[t]he court should freely give leave when justice so requires." *Id.* The Rule 15 standard favors granting leave to amend, and a district court must have a "substantial reason" for denying leave. *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)). In deciding whether to allow amendment of the complaint, a district court may consider factors such as "undue delay, [the movant's] bad faith or dilatory motive, repeated failures to cure deficiencies by amendments . . . , undue prejudice to the opposing party . . . , and futility of the amendment." *Id.* (quoting *Jones*, 427 F.3d at 994). An amendment is futile if it would not survive a Rule 12(b)(6) motion to dismiss. *Id.*

**ii. Bass's proposed amendments are futile.**

Foremost, Bass's objections to the recommendation that the Court conclude that his proposed amendments are futile are not specific and, thus, need not be evaluated by the Court. *See Battle*, 834 F.2d at 421 (The district court need not consider "[f]rivolous, conclusive[,] or general objections."). "[A]n objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify

the place in the magistrate judge's report and recommendation where the disputed determination is found." *Thompson*, 2022 WL 17585271, at *1. Rather than asserting specific objections to the FCR's determinations as to each of Bass's proposed amendments, Bass generally objects that the magistrate judge's rulings have prevented him from pleading his best case.

According to Bass, the prior order denying leave to file a complaint that failed to comply with Federal Rule of Civil Procedure 8's requirement of a "short and plain" statement, *see* Dkt. No. 42, combined with the FCR's recommendation to deny leave "because the [proposed] shortened complaint lacks those very details" included in his prior proposed complaint create a "closed loop." *See* Dkt. No. 56-1 at 7–8. But the FCR does not find the proposed amendments futile for lack of detail. Instead, Judge Burch meticulously evaluates each of Bass's claims and any new allegation with respect to each claim and then explains why the new allegations fail to plead the particular elements of each claim. *See* Dkt. No. 54 at 45–56. Because Bass makes only a general allegation that the magistrate judge's rulings have put him in an impossible pleading predicament but fails to make specific objections that put the Court on notice of any particular errors, the Court overrules this objection.

Next, Bass again directs the Court to matters outside of his own motion and proposed amended complaint to support his contention that "[e]very fact" necessary to plead his claims "exists in the record." Dkt. No. 56-1 at 9. Again, this objection fails for lack of specificity. *Thompson*, 2022 WL 17585271, at *1 What is more, the Court evaluates only the proposed pleadings when determining whether a plaintiff's proposed amendments are futile. *See Marucci Sports, LLC*, 751 F.3d at 378 (explaining that an amendment is futile if

it would not survive a Rule 12(b)(6) motion to dismiss); *Collins*, 224 F.3d at 498 (stating that "a district court must limit itself to the contents of the pleadings, including attachments thereto" when determining whether a claim should be dismissed under Rule 12(b)(6)). Thus, matters outside of his pleadings are not properly before the Court when deciding Bass's motion for leave to amend. Accordingly, the Court overrules this objection.

With respect to specific objections, Bass first argues that the proposed amendments to his procedural due process claim against Gibson are not futile for the same reasons he addressed in what he labels as "Objection 4." Dkt. No. 56-1 at 10. With respect to Objection 4, the Court determined *supra* that Bass failed to allege facts against Gibson that, even if true, would overcome his defense of qualified immunity. *See* Analysis § 3.B.iii.b. Bass's so-called "structural-independence facts"—that Gibson, the hearing officer, was paid by TTUHSC to preside over such hearings, Dkt. No. 56-1 at 10—do not alter the conclusion that it was not clearly established at the time of the hearing that the defendants' conduct was unlawful. This objection is overruled.

Bass next argues that his proposed amendments state a claim for ADA and RA retaliation because he alleges that: (1) the defendant, Cobbs, directed Bass's professionalism coach to cease all contact with the plaintiff, "terminating his only support relationship during the critical pre-hearing period"; and (2) TTUHSC escalated a dormant debt owed by the plaintiff immediately after he filed a public information request for TTUHSC's records. Dkt. Nos. 43-1 at 24; 56-1 at 10. As Judge Burch correctly points out, neither of these new factual allegations overcome TTUHSC's sovereign immunity from ADA retaliation claims because Bass does not allege a continuing violation. *See infra* Analysis § B.iv; *see also* Dkt. No. 54 at 25–26, 51.

Nor do these allegations save his RA retaliation claim. Bass contests that the FCR compares the Title VII standard for a materially adverse action with the RA standard. *See* Dkt. Nos. 54 at 51; 56-1 at 10. But Bass's disagreement with cited authority does not cure the fact that Bass alleges only that this action was retaliatory—not that cutting off communication with his professionalism coach prior to his disciplinary hearing was a materially adverse action that would dissuade him from engaging in a protected activity. *See Grodman*, 816 F. Supp. 3d at 622 (stating that a plaintiff must allege a causal connection between the protected activity and the materially adverse action to state an RA retaliation claim). Thus, his RA retaliation claim based on this alleged action fails.

Moreover, although he identifies TTUHSC's alleged escalation of an owed debt as a retaliatory action, he has not pled facts or cited to authority that his public information request is a protected activity or that, but for this activity, TTUHSC would not have escalated his debt—a debt that he does not dispute he owes. *Cf. Jeudy*, 2026 WL 675683, at *5 (noting that the plaintiff failed courses because she failed to complete the work, not because the school retaliated against her for engaging in a protected activity). Thus, the Court overrules this objection.

Finally, Bass objects that the FCR fails to evaluate his request to add Dr. David Trotter as a defendant. Dkt. No. 56-1 at 10. However, because Bass fails to state a viable claim and because any claim against Trotter based on the alleged facts would be barred by qualified immunity, the addition of Trotter as a defendant is futile. In his proposed complaint, Bass alleges that Trotter violated his due process rights by "abandon[ing] the negotiated hearing structure without notice and alter[ing] the procedural framework to [Bass's] detriment." Dkt. No. 43-1 at 20. In support, Bass alleges that "Trotter told [him]

that grievances would be heard first because that structure provided the most protection," and Bass "accepted the hearing over voluntary withdrawal in reliance on that representation." *Id.* at 10–11. But Bass's proposed pleading also alleges that Gibson and TTUHSC's general counsel—not Trotter—conducted the hearing and disallowed Trotter from testifying. *Id.* at 11–12. Bass's own contentions refute that Trotter was responsible for the "hearing structure" and, thus, he has not pled facts that allege a due process violation by Trotter. What is more, he has not presented any authority that it was clearly established that Trotter's alleged conduct was unconstitutional; therefore, Trotter is entitled to qualified immunity. Thus, adding Trotter as a defendant would be futile.

In sum, the Court has reviewed the plaintiffs' proposed complaint in full, agrees that the proposed amendments are futile, and adopts the FCR's recommendation to deny the motion for leave to amend (Dkt. No. 43).

**4. Conclusion**

In sum, the plaintiff's objections to the FCR, by and large, reflect a misunderstanding of the law and rely on materials outside of the operative pleading. Bass has failed to state claims upon which relief may be granted and has not alleged facts that overcome the defenses of sovereign and qualified immunity. Moreover, the plaintiff's proposed amended pleading does not cure the defects in his claims. Thus, the Court overrules the plaintiff's objections and adopts the FCR (Dkt. No. 54).

Accordingly, the Court grants the defendants' motion to dismiss (Dkt. No. 27) and denies the plaintiff's motion for leave to file a second amended complaint (Dkt. No. 43). Because the Court determines that it does not have subject-matter jurisdiction over the ADA

claims and the RA claim for declaratory relief, these claims are dismissed without prejudice. All other claims are dismissed with prejudice.

So ordered on September 23, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE